UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

LEROY DORSEY,

                          Plaintiff,

            -v.-                                    9:09-CV-1011
                                                    (GLS)(DEP)
BRIAN FISHER; DALE ARTUS;
RACETTE; and T. LaVALLEY,

                     Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

APPEARANCES:

LEROY DORSEY
97-A-3442
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929
Plaintiff, *pro se*

GARY L. SHARPE, United States District Judge

**DECISION and ORDER**

I.    **Background**

        Plaintiff Leroy Dorsey commenced this action by filing a *pro se* civil rights

complaint.  Dkt. No. 1.  By Decision and Order of this Court filed on December

15, 2009 ("December Order"), the Court found that Dorsey's Complaint failed to

set forth facts plausibly suggesting that any of the defendants were personally

involved with the alleged violation of Dorsey's constitutional rights or that any of

Dorsey's constitutional rights were violated. Dkt. No. 15 at 11.  In light of his *pro*

*se* status, Dorsey was afforded an opportunity to submit an amended complaint. *Id.* at 15.  Presently before the Court is plaintiff's amended complaint.  Dkt. No. 17.  Plaintiff has again named Fisher, Artus, Racette, and LaValley as defendants as well as twenty-one new defendants, many of whom are John/Jane Doe defendants.[1]  *Id.* at 3, 4, 7.  For the reasons set forth below, the amended complaint is dismissed for failure to state a claim upon which relief may be granted under Section 1983.

## II.    Legal standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[2] 28 U.S.C. § 1915(e)(2).  Likewise, under 28 U.S.C. § 1915A, a court must

---

[1] The newly named defendants are Sargent Furneau; Sargent Keanan; Sargent Hicks; Corr. Counselor Recore; John Doe, 7-3-A-Officer, E-Block; C.O. Defire; C.O. Terrell; C.O. Hardy; C.O. Farrow; C.O. Terry; C.O. D.Lucia; C.O. Beeman; C.O. John Doe, 3-11, E-Block (1-11-10); C.O. John Doe 3-11, E-Block (1-12-10); C.O. John Doe, 3-11, E-Block (1-9 and 10-10); C.O. John Doe, 7-3, E-Block; C.O. Russell, Lower F-1; Sargent Derkin, 7-3, Lower F-1-15; Sargent John Doe, Escort to O.M.H., 7-3, Lower F-1-15; O.M.H. Chief Berman; and O.M.H. Jane Doe, 3rd Floor Satelite Unit.  *See* Dkt. No. 17 at 3, 4, 7.

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (citation omitted).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (*quoting Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. *v.*

*Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft*, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 129 S.Ct. at 1949 (citing *Twombly*, 127 S.Ct. 1955). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft*, 129 S.Ct. at 1949 (citing Fed. Rule Civ. Proc. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 129 S.Ct. at 1949. Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.  *Sheehy v. Brown*, No. 08-0102-cv, 2009 WL 1762856, at *1 (2d Cir. Jun. 23, 2009).

**III.    Summary of Amended Complaint**

In his amended complaint, Dorsey alleges that beginning with his arrival at Clinton from November 2008 to 2010, Fisher and all named defendants violated plaintiff's civil and constitutional rights and his rights under Federal and state laws and state rules.  Dkt. No. 17 at 8.  Defendants falsified records; retaliated against plaintiff; denied plaintiff accessories for his breathing machine and daily medications, as well as state clothes, cosmetics, and legal personal supplies; and stole his property. *Id.*

Dorsey alleges that defendants Furneau, Keanan, Hicks were supervisors in charge of E-Block and allowed the correctional officers - specifically defendants John Doe A-Officer, Defire, Terry, Hardy, Farrow, D. Lucia, Beeman, John Doe, 3-11 (1-11-10); John Doe 3-11 (1-12-10); and John Doe, 3-11 (1-9 and 10-10) - to "commit numerous civil rights violations"[3] and state and federal crimes, including federal mail stealing and the "Crime of First Degree Murder-Att. Murder" on Dorsey.  *Id.* at 10.  Dorsey claims that the attempted murder occurred on July 13, 2009 when the E-Block defendants put "D.N.A. - Infected Body Fluid" in Dorsey's food.  *Id.*  Dorsey claims that the aforesaid E-Block defendants used their "Snitch Informer" and "Four 4 Inmate Porter's - Some Homosexuals" to violate Dorsey's rights.  *Id.*  After eating the poisoned food,

---

[3] Throughout his amended complaint, Dorsey frequently encloses words or phrases in quotation marks.  When quoting from the amended complaint, the Court will omit internal quotation marks.

Dorsey's mouth became swollen with sores and the "Medication Nurse - Escort C.O." refused to provide Dorsey with medical emergency sick call. *Id.*

Dorsey alleges that the defendants used inmate porters, who have been released to immigration for deportation, to pass rumors, lies, and personal information about Dorsey. *Id.* Defendants also let these inmate porters into Dorsey's cell when he was not there to steal Dorsey's property, plant weapons in Dorsey's cell, and infect Dorsey's food, and rewarded them for their actions against Dorsey. *Id.* at 10-11. Dorsey claims that the actions of the inmate porters stopped when Dorsey was confined to his cell for 24 hours. *Id.* at 11.

Defendants on E-Block during the 7 to 3 shift purposely opened Dorsey's cell so he could be assaulted as he slept by the "Loyal C.O. Inmates." *Id.* at 11. Dorsey claims that the defendants whom he collectively refers to as defendants "E-T"[4] are "Responsible" for the aforesaid acts. *Id.* at 11. Dorsey also states that defendants E-T "stole 2 vendor packages"[5] from Dorsey. *Id.* at 11.

Dorsey alleges that defendant LaValley is a "criminal." Dkt. No. 17 at 12. Dorsey complains that the Court should have, as soon as Dorsey filed this

---

[4] Defendants "E-T" consist of Furneau; Keanan; Hicks; Recore; John Doe, 7-3  A-Officer, E-Block; Defire; Terrell; Hardy; Farrow; Terry; Lucia; Beeman; C.O. John Doe, 3-11, E-Block (1-11-10); C.O. John Doe 3-11, E-Block (1-12-10); C.O. John Doe, 3-11, E-Block (1-9 and 10-10); and C.O. John Doe, 7-3, E-Block.  *See* Dkt. No. 17 at 3-4.

[5] It appears that the stolen vendor packages included cigarette papers and seven cassette classic tapes.  Dkt. NO. 17 at 11.

action, planted federal undercover agents "near" Dorsey to "catch" and "record" the "N.Y.S." cover-up of defendants' continuing violations of Dorsey's constitutional rights. *Id.*

Dorsey claims that defendant Commissioner Fisher was personally involved in wrongdoing against Dorsey because in October 2006, while Dorsey was incarcerated at Sing Sing Correctional Facility, Fisher denied Dorsey the right to participate in Family Reunion Program visits and that the denial was in retaliation for "petitioning Fisher" for entry into the program. Dkt. No. 17 at 12-13. Dorsey also alleges that Fisher illegally changed the rules of the Family Reunion Program to exclude Dorsey from the program. *Id.* Dorsey also seems to allege that after Fisher became acting commissioner of the Department of Correctional Services in 2007, Fisher failed to address Dorsey's letters of complaint regarding problems that Dorsey was having at Woodbourne Correctional Facility and claimed that Fisher's response was always the same - "Let the Prison ... Investigate." *Id.* at 13.

On December 15, 2009, defendant Russell issued Dorsey a false misbehavior report and "keeplocked" Dorsey. Dkt. No. 17 at 15. Dorsey claims that the false misbehavior report was issued in retaliation for "petitioning." *Id.* at 17. Defendant Russell also lied at the subsequent disciplinary hearing. *Id.*

Dorsey alleges that on December 20, 2008, after his property was "stolen",

he asked defendant Artus to send a "search team" but Artus refused the request.  Dkt. No. 17 at 14.  Dorsey states that the next day he realized why Artus would not send a search team because all of the E-Block cells were full of stolen property and he alleges that some of the stolen property was his because he "was hearing [his] cassette tapes."  *Id.* Dorsey appears to allege that inmate cells on E-Block were opened so that the inmates could be assaulted while inmate porters stole their property. *Id.* In 2009, Dorsey stopped Artus when he was touring E-Block and told him about all of the stolen property and what was happening on E-Block, but Artus did nothing about it, and "never walked toured again."  *Id.* Plaintiff then faced more staff set-ups and was moved to another block to "hinder prosecution" of getting the "thousands" of legal documents out to courts by his deadlines.  *Id.*  On December 25, 2009, defendant Artus "worked" as an officer as part of a job swap.  Dkt. No. 17 at 15.  While Artus was touring, Dorsey complained to him about legal mail that was "not confirmed mailed to the court", but Artus merely told Dorsey to write to him about it.  *Id.* Defendant Artus said he did not know Dorsey, which was a "lie."  *Id.*

On December 29, 2009, a hearing was held regarding the false misbehavior report issued by defendant Russell; Dorsey was found guilty of the charges based upon "lies" on the tape and because of "retaliation" by defendant Artus.  *Id.*  Dorsey claims that Artus's retaliation was not over.  *Id.*  Dorsey

alleges that after his hearing, officers locked Dorsey in a "small confined shower" for thirty minutes while four young officers "trashed" his cell, threw away legal mail, and took his breathing machine accessories, daily medications, cosmetics, legal supplies, pens, and tape.  *Id*. at 15-16.

Dorsey alleges that during either breakfast or lunch on a weekend, Dorsey tried to speak to the Deputy Superintendent of Security, who was in the cafeteria at the time, about library call-outs on weekends but "the Escort C.O." said "No", pulled Dorsey to the side and threatened him, saying he did not care about Dorsey's court deadlines.  *Id*. at 15.

Dorsey alleges that defendant Racette is the son of a former Clinton Correctional Facility warden and makes tours of E-Block, and has received letters from Dorsey, but does nothing to help Dorsey.  Dkt. No. 17 at 16. Defendant Racette is like his father and lets officers beat and kill inmates then covers up the crimes.  *Id.*  Defendant Racette "is also behind" the violations of Dorsey's constitutional rights.  *Id.*  Defendant Hardy toured Dorsey's block one day with Racette and told Racette that Dorsey was going to the Special Housing Unit. *Id.*

Dorsey alleges that defendant LaValley is the "son of past warden" and that his father was apparently involved with "bodies found."  Dkt. No. 17 at 16. Defendant LaValley was the first head official to greet Dorsey in November 2008

9

and promised a "fresh start", but when Dorsey was moved to E-Block, "trouble"
began. *Id.* In July, defendant LaValley signed off on a "stolen tape notice"
which he knew was false, "which is a felony charge." *Id.* at 16-17.

Defendant Recore violated Dorsey's rights under the Fourteenth
Amendment by releasing some personal information about Dorsey which went
from officers to inmates in E-Block. Dkt. No. 17 at 17.  Dorsey also claims that
defendant Recore "eavesdropped" on Dorsey's legal conference call to a Judge
and an attorney general. *Id.*

While not entirely clear, it appears that Dorsey alleges that defendant
Derkin allowed defendant Russell to falsely accuse Dorsey of misbehavior.  Dkt.
No. 17 at 17.  Dorsey alleges that defendant Defire was the property draft officer
at Clinton and that when Dorsey was drafted to Clinton, some of his draft bags
had been opened and some of his property stolen. *Id.* at 18.

Dorsey claims that between 2008 and 2010, as a result of the foregoing,
he was subjected to cruel and unusual punishment, denied due process and
equal protection, denied the opportunity to "petition the government," purposely
contaminated with "infected D.N.A." and food poisoning, and denied medical
attention after his face and mouth became swollen inside and out.  Dkt. No. 17
at 18.  Dorsey claims that no security was called to investigate his attempted
murder and the crime was covered-up.  *Id.*  Dorsey seeks substantial monetary

relief and transfer to Fishkill Correctional Facility.  Dkt. No. 17 at 19.  Dorsey
also wants the Court to "take away" defendants' immunities and fifth amendment
protections because they are criminals involved in "Enterprise Corruption."  *Id.*

## IV.    Review of amended complaint

In reviewing Dorsey's amended complaint, the Court recognizes that it
must construe *pro se* complaints liberally.  *See Harris v. Mills*, 572 F.3d 66, 72
(2d Cir. 2009).  Even after allowing for due deference to Dorsey's *pro se* status,
Dorsey's conclusory allegations are insufficient to meet the standards set forth in
either *Ashcroft* or *Twombly*.  Dorsey's amended complaint also fails to give
defendants "fair notice" of the grounds upon which Dorsey's claims are based.
Significantly, the amended complaint's failure to provide such notice followed a
district court order that, in dismissing Dorsey's original complaint, explained its
deficiencies and provided Dorsey with an opportunity to cure the defects. The
order also advised Dorsey that failure to do so would result in dismissal. Dorsey
has not complied with the Court's directions set forth in the December Order.
The amended complaint contains a litany of conclusory statements which
amount to nothing more than legal conclusions and hollow allegations that all of
the defendants conspired to harm Dorsey by stealing his property, attempting to
murder him, retaliating against him, and denying him due process and medical
care.  *See generally* Dkt. No. 17.

The Court finds that Dorsey's allegations fail to state a claim upon which relief may be granted and in many instances are frivolous, both legally and factually, and the amended complaint is therefore subject to dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A(b).  Any vague claims that can be discerned from the amended complaint are discussed below.

### A.   Personal Involvement

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983.  Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Any complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations

omitted).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability. *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319,

323-324 (2d Cir. 1986).

### 1.    Defendant Fisher

Dorsey alleges that after defendant Fisher became acting commissioner, he failed to respond to Dorsey's complaints and his response was always to let the prison investigate and deal with its own situation.  Dkt. No. 17 at 13.  These allegations fail to demonstrate the personal involvement of Fisher in any wrongdoing against Dorsey.  An allegation that an official ignored a prisoner's letter of protest or a request for an investigation of allegations contained in the letter is insufficient to hold that official liable for the alleged violations. *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (citing *Greenwaldt v. Coughlin*, 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995); *see also  Boddie v. Morganthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (Even if a supervisory official ignores an individual's letter, this fact alone is insufficient to establish personal responsibility).

### 2.    Defendants Furneau, Keanan, Hicks

Plaintiff alleges that defendants Furneau, Keanan, and Hicks, as supervisors of E-Block, allowed correctional officers on E-Block to violate plaintiff's civil rights and commit crimes including mail stealing and attempted murder.  Construed liberally, Dorsey alleges that Furneau, Keanan, and Hicks failed to properly supervise their subordinates. Here, Dorsey provides nothing

but his bare assertion that Furneau, Keanan, and Hicks allowed the correctional

officers in their charge to violate Dorsey's civil rights.  Dkt. No. 17 at 10.

> Even under the liberal "notice pleading standard" ... a Section
> 1983-based complaint must still allege particular facts indicating that
> an individual defendant was personally involved in the deprivation of
> the plaintiff's constitutional rights; mere "bald assertions and
> conclusions of law" do not suffice. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d
> Cir. 1996). A complaint that essentially regurgitates the relevant
> "personal involvement" standard, without offering any facts indicating
> that, or how, an individual defendant in a supervisory role was
> personally involved in a constitutional violation, cannot withstand
> dismissal.

*Davis v. County of Nassau*,  355 F. Supp. 2d 668, 676-77 (E.D.N.Y. 2005).

Dorsey's conclusory allegations against defendants Furneau, Keanan, or Hicks

fail to allege any claim against these defendants on the basis of supervisory

liability or otherwise.

### 3.    Sgt. John Doe (Escort to OMH), OMH Chief Berman, and OMH Jane Doe

Dorsey includes Sgt. John Doe (Escort to OMH), OMH Chief Berman, and

OMH Jane Doe as defendants in the caption of his complaint and in the listing of

defendants but the complaint does not assert allegations of wrongdoing by

them.  "Dismissal is appropriate where a defendant is listed in the caption, but

the body of the complaint fails to indicate what the defendant did to the plaintiff."

*Cipriani v. Buffardi*, No. 9:06-CV-889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20,

2007) (citing *Gonzalez v. City of New* York, No. 97 CIV. 2246, 1998 WL 382055,

at *2 (S.D.N.Y. Jul. 9, 1998); *Crown v. Wagenstein*, No. 96 CIV. 3895, 1998 WL

118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in

complaint insufficient to allege personal involvement); (*Taylor v. City of New

York,* 953 F.Supp. 95, 99 (S.D.N.Y. 1997) (same)). Because Dorsey has failed

to allege any personal involvement on the part of Sgt. John Doe (Escort to

OMH), OMH Chief Berman, and OMH Jane Doe, they are dismissed as

defendants.

### B.    Failure to state a claim

### 1.    Conspiracy

Dorsey seems to allege that he has been the victim of a massive

conspiracy by the New York State Department of Correctional Services and its

employees, including all of the defendants named herein and that the

conspiracy amounted to "Enterprise Corruption." *See generally* Dkt. No. 17.

Dorsey alleges the defendants' criminal conduct has been covered-up.  *Id.*

A conspiracy claim under Section 1983 must allege that: (1) an agreement

existed between two or more state actors to act in concert to inflict an

unconstitutional injury on plaintiff and (2) an overt act was committed in

furtherance of that goal.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25

(2d Cir. 2002). Vague and conclusory allegations that defendants have engaged

in a conspiracy must be dismissed.  *Ciambriello*, 292 F.3d at 325; *see also*

*Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d  Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief).  Moreover, a Section 1983 conspiracy claim must not only allege a conspiracy, but also the "actual deprivation of constitutional rights."  *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363-64 (S.D.N.Y. 2000) (citing *Malsh v. Austin,* 901 F. Supp. 757, 765 (S.D.N.Y. 1995).  "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights."  *See id.*

Dorsey alleges in conclusory fashion that all of the defendants were involved in a conspiracy against him. Dorsey does not assert any plausible facts giving rise to a conspiracy, but instead makes vague and shocking statements that defendants tried to murder him by poisoning his food with infected DNA, stealing his property, releasing his personal information to everyone on E-Block, and ignoring his complaints about, and covering up, all of the aforesaid wrongdoing. Plaintiff has not alleged, except in conclusory fashion, that a conspiracy existed or that any meeting of the minds occurred between any of

the defendants.  Moreover, many of the alleged conspiratorial acts, *i.e.* stealing Dorsey's property or not responding to his letters of complaint, do not rise to the level of constitutional violations. Additionally, many of the allegations raised in the amended complaint in support of a conspiracy are wholly unbelievable.  For example, Dorsey claims that (1) inmate porters laced his food with infected DNA or infected bodily fluids at the direction of DOCS officials and that DOCS supervisors rewarded them for doing so and (2) his entire prison block was full of stolen property that was taken from inmates by inmate porters at the behest of DOCS officials.

The amended complaint does not contain any allegations to support a "plausible" conspiracy claim involving any of the defendants.  "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (citing *Twombly*, 127 S.Ct. at 1965). Additionally, many of the allegations raised in the amended complaint in support of a conspiracy are wholly unbelievable.  For example, Dorsey claims that (1) inmate porters laced his food with infected DNA or infected bodily fluids at the direction of DOCS officials and that DOCS supervisors rewarded them for doing so and (2) his entire prison block was full of stolen property that was taken from inmates by

18

inmate porters at the behest of DOCS officials.

The conspiracy claims are wholly conclusory and, as such, are insufficient even at the pleading stage to state a claim for relief pursuant to Section 1983.

## 2.    Defendant Artus

Dorsey alleges that defendant Artus failed to investigate his complaints of stolen property or mail; failed to send a "search team" to look for the stolen property, in an apparent attempt to cover up a massive theft of inmate property on E-Block; and retaliated against Dorsey.  Dkt. No. 17 at 14-16.

Even if true, the fact that Artus ignored Dorsey's complaints regarding theft of his property and other violations of Dorsey's rights by various staff at Clinton Correctional Facility is insufficient to state a claim against Artus.  *See Woods v. Goord*, No. 01 Civ. 3255(SAS), 2002 WL 731691, at *7 (S.D.N.Y. Apr.23, 2002) (collecting cases) (For purposes of Section 1983, personal involvement cannot be established based on the receipt of a letter or grievance.); *Swindell v. Supple*, No. 02 Civ. 3182RWS, 2005 WL 267725, at *10 (S.D.N.Y. Feb.3, 2005) ("[C]orrespondence to and from [DOCS Commissioner] Goord does not demonstrate [his] personal involvement."); *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003) ("[A]llegations that an official ignored a prisoner's letter" are insufficient to impose liability under Section 1983.).

As to Dorsey's claim that Artus retaliated against him, Courts must

approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002)); *see also Colon*, 58 F.3d at 872 (courts should "examine prisoners' claims of retaliation with skepticism and particular care" given "the ease with which claims of retaliation may be fabricated."). In order to allege a viable retaliation claim, a plaintiff must advance "non-conclusory" allegations establishing:

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

*Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). Recognizing the possibilities for abuse with respect to retaliation claims, the Circuit has insisted "on a higher level of detail in pleading them." *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987). "[A] complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996).

Reading the amended complaint generously, Dorsey may allege that Artus retaliated against him because of Dorsey's complaints to Artus concerning staff misconduct. Since the filing of prison grievances is a constitutionally protected activity, Dorsey may meet the first prong of the retaliation test. *See Graham,* 89 F.3d at 80; *see also Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir. 1988) (prisoner's have the right to petition for redress of grievances). Dorsey alleges that he was found guilty of charges at a disciplinary hearing on December 29, 2009 because of "Dale Artus Retaliation" and then alleges that he realized that Artus's retaliation was "Not Over" when later that day his cell was ransacked by "4 Young Officers."  Dkt. No. 17 at 15. Dorsey has not plausibly alleged any causal connection between Dorsey's complaints to Artus and the conduct of the remaining defendants or the "4 Young Officers", or any details regarding how Artus retaliated against him.  Dorsey's allegations of retaliation by Artus are wholly conclusory and lack sufficient facts to satisfy the requirement for a "higher level of detail" required by the Second Circuit, *see Gill*, 824 F.2d at 194, therefore Dorsey has failed to allege a plausible retaliation claim against Artus.

### 3.    Defendant Fisher

Dorsey alleges that in October 2006, while Fisher was Superintendent of Sing Sing, Fisher denied Dorsey entry into the Family Reunion Program.  Dkt. No. 17 at 12-13.  Dorsey fails to state a claim against Fisher in this regard. *See*

*Leevon v. Goord*, No. 99-CV-6208, 2003 WL 22384787, at *7 (W.D.N.Y. Sept. 4, 2003) (inmate's liberty interests were not implicated by the forfeiture of his participation in the Family Reunion Program); *see also Gatson v. Selsky*, No. 94-CV-292, 1997 WL 159258, at *3 (N.D.N.Y. Apr.4, 1997) (inmate's loss of Family Reunion Program visits does not give rise to liberty interest). Dorsey also claims that Fisher denied him entry into the program "in Retaliation for Petitioning Fisher, et al, Sing Sing."  Dkt. No. 17 at 13.  These wholly conclusory or vague statements of retaliation by Fisher do not satisfy the requirement for a "higher level of detail" required by the Second Circuit. *See Gill*, 824 F.2d at 194; *see also* Section IV.B.2, *supra*.

### 4.    Eighth Amendment medical claim

Dorsey alleges that a "Medication Nurse" and "Escort C.O." denied him adequate medical treatment when his food was infected or poisoned, causing his mouth to become swollen inside and out with sores.  Dkt. No. 17 at 10. Dorsey also claims that "4 Young Officers" threw away his "Breathing Machine Accessories" and "3 Daily Medications."  *Id.* at 16.  Apart from being unable to identify the defendants involved by name, the complaint fails to state a claim under the Eighth Amendment as it fails to allege that any defendant was deliberately indifferent to a serious medical need of Dorsey.

A prisoner may allege an Eighth Amendment claim arising out of

inadequate medical care; to do so, the prisoner must allege "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate; claims of malpractice or disagreement with treatment are not actionable under § 1983. *Murphy v. Grabo*, No. 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, D.J.).  Dorsey's conclusory allegation that an unidentified Medication Nurse and escort correctional officer refused Dorsey access to emergency sick call on one occasion fails to state a claim upon which relief may be granted under the Eighth Amendment.  *See Brown v. Sheridan*, 894 F. Supp. 66, 71 (N.D.N.Y. 1995) ("[O]ne isolated failure to provide medical treatment to a prisoner, without more, is generally not actionable" unless the "surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment.") Dorsey has made no factual, non-conclusory allegations to suggest any degree of deliberateness on the part of the unidentified nurse or the escort officer, especially in light of the implausibility of the underlying claim that he was deliberately poisoned with infected DNA.  Therefore Dorsey has failed to allege a constitutional violation under the Eighth Amendment against these defendants.

    **5.**    **Defendant LaValley**

Dorsey alleges that Defendant LaValley is a "criminal" and seems to allege that LaValley's father - a former superintendent of Clinton Correctional Facility - was a murderer or somehow connected with "bodies found." Dkt. No. 17 at 12, 16.  Dorsey alleges that LaValley made a false statement, "which is a felony charge."  *Id.* at 16-17.  Besides being decidedly vague and inflammatory, the allegations that defendant LaValley engaged in criminal conduct or made a false statement do not rise to the level of a constitutional violation and therefore Dorsey has failed to state a claim against defendant LaValley.

### 6.    Theft of personal property

Dorsey alleges that various items of his personal property were stolen. Dkt. No. 17 at 11, 14-16.  Dorsey also alleges that defendant Defire, the property draft officer, may have been responsible for opening and stealing property from Dorsey's draft bags.  *Id.* at 18. Construed liberally, Dorsey may be alleging that he was deprived of his property without due process. As an initial matter, Dorsey does not clearly allege which of the twenty-five defendants named in his amended complaint were actually responsible for the theft of his property from his cell.  Dorsey merely alleges that the defendants allowed inmate porters into his cell to steal property.  These conclusory allegations against multiple defendants simply does not state a plausible claim for relief, nor does it give fair notice of the actual claim to any defendant.  Even if Dorsey had

24

identified which particular defendant was responsible for the theft, his claim

would still fail.

> Even an intentional deprivation of an inmate's property that is
> random and unauthorized does not give rise to a due process claim
> so long as "adequate state post-deprivation remedies are available."
> *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d
> 393 (1984). New York law provides such a remedy in the form of an
> action before the New York Court of Claims. *See* N.Y. Ct. Cl. Act § 9
> (McKinney 1989 & Supp.2005); *Diaz v. Coughlin,* 909 F.Supp. 146,
> 150 (S.D.N.Y.1995) (dismissing property deprivation due process
> claim because inmate could bring action in Court of Claims);
> *McCorkle v. Juchenwicz,* No. 94 Civ. 6363(TPG), 1999 WL 163205,
> at *4 (S.D.N.Y. Mar.23, 1999) (same); *Gadson v. Goord,* No. 96 Civ.
> 7544(SS), 1997 WL 714878, at *7 (S.D.N.Y. Nov.17, 1997) (same);
> *Ifill* [*v. Goord*, No. 03-CV-355S]*,* 2005 WL 2126403, at *6 [W.D.N.Y.
> Sept. 1, 2005] (same).

*Collins v. Goord*, 438 F. Supp. 2d 399, 418-19 (S.D.N.Y. 2006); *see also*

*Leitzsey v. Coombe*, 998 F. Supp. 282, 289 (W.D.N.Y. 1998) ("[A] claim for the

loss of property does not lie in federal court if the state courts offer an adequate

remedy for such a deprivation.") (citing *Hudson v. Palmer*, 468 U.S. 517, 533

(1984).[6]  For the same reasons, Dorsey's claim that Defire stole property from

Dorsey's draft bags is equally infirm.  Dorsey may not pursue his theft of

property claim in this Court.

### 7.   Legal mail

---

[6] New York Court of Claims Act, Section 9, permits an inmate to pursue a claim for
deprivation of property against the State of New York in the New York Court of Claims and
therefore provides a remedy for such claims. *Leitzsey*, 998 F. Supp. at 289-90.

Dorsey alleges that "4 Young Officers" threw away his legal mail and legal supplies.  Dkt. No. 17 at 15-16.  Construing Dorsey's amended complaint liberally, Dorsey may be claiming that he is being denied access to the courts because of mail tampering and denial of "legal supplies."  In the first instance, the Court notes that none of the defendants are alleged to be responsible for this conduct; instead Dorsey alleges that his mail and legal supplies were taken by "4 Young Officers."  That being said, even if Dorsey could establish that any of the defendants were personally involved with these alleged actions, Dorsey's claim would still fail.  All persons, including prisoners, have a constitutional right of access to the courts.  *See Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997).  To establish a violation of this right, "a plaintiff must demonstrate that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.' "  *Id.* at 247 (quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)). In this case, Dorsey has alleged no actual injury in connection with his access to the courts claim and therefore fails to state a claim pursuant to Section 1983.

### 8.    Defendant Russell

Dorsey alleges that the defendant Russell issued a false misbehavior report against him.  Dkt. No. 17 at 15. However, the mere allegation that a defendant filed a false disciplinary charge is insufficient to state a claim for the

violation of a plaintiff's rights.  "[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citation omitted).  Dorsey therefore fails to state a claim against defendant Russell with respect to the misbehavior report that he issued to Dorsey.

However, Dorsey also claims that defendant Russell issued the misbehavior report to Dorsey in retaliation for "petitioning." Dkt. No. 17 at 17. Construing Dorsey's complaint liberally, he may be alleging that he was retaliated against for filing a grievance or complaint and may therefore meet the first prong of the retaliation test.  *See Graham,* 89 F.3d at 80. Dorsey has not however proffered non-conclusory allegations showing any sort of causal connection between the alleged retaliatory conduct by defendant Russell, namely the issuance of a misbehavior report, with any alleged "petition" by Dorsey.  Dorsey's allegations of retaliation which are conclusory and unsupported by any facts, cannot serve to elevate his fabricated misbehavior report claim to the level of a constitutional violation. *See* Section IV.B.2, *supra*. Dorsey has failed to state a claim against defendant Russell pursuant to Section 1983.

### 9.    Defendants Racette and Hardy

Dorsey alleges that defendant Racette is the "son of Past Clinton Warden"

and like his father, lets officers beat and kill inmates and then covers it up.  Dkt.

No. 17 at 16.  These conclusory allegations fail to state a plausible claim against

Racette pursuant to Section 1983.  Dorsey also claims that all letters that he

sends to the Superintendent are forwarded to Racette, yet he does nothing to

help Dorsey.  *Id.*  An allegation that an official ignored a prisoner's letter of

protest or a request for an investigation of allegations contained in the letter is

insufficient to hold that official liable for the alleged violations. *Johnson*, 234 F.

Supp. 2d at 363; *see also  Boddie v. Morganthau*, 342 F. Supp. 2d at 203 (Even

if a supervisory official ignores an individual's letter, this fact alone is insufficient

to establish personal responsibility).

Dorsey alleges that, while on tour with Racette, defendant Hardy told

Racette that Dorsey was going to the Special Housing Unit.  Dkt. No. 17 at 16.

This allegation does not state a claim of constitutional dimension; in fact it states

no claim whatsoever.

### 10.   Defendant Derkin

Dorsey alleges that defendant Derkin "lied" to him regarding how many

bags of property an inmate may possess.  Dkt. No. 17 at 17.  While not entirely

clear, Dorsey also appears to allege that defendant Derkin did not properly

supervise his subordinate, defendant Russell, because he told Russell to "Do

whatever you want to do."  *Id.*  These allegations are wholly conclusory and fail

to state a claim of constitutional dimension.  Dorsey may also allege that Derkin should be responsible for failing to properly supervise Russell because he allowed Russell to falsely accuse Dorsey of misconduct.  Since the Court has already determined that Russell did not violate Dorsey's constitutional rights, *see* Section IV.B.8, *supra,* there is no unconstitutional conduct for which Derkin, as a supervisor, can be held responsible. *See Toole v. Connell*, No. 9:04-CV-0724, Report-Recommendation, 2008 WL 4186334, at *7 (N.D.N.Y. Sep. 10, 2008) (Peebles, M.J.), *adopted*, 2008 WL 4186334, at *1 (Kahn, J.) (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983); *see also Linares v. Mahunik,* No. 05 Civ. 625, 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (Sharpe, D.J. and Treece, M.J.) (holding plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation").

### 11.   Defendant Escort C.O.

Dorsey alleges that on one occasion, while taking Dorsey to a weekend meal, defendant Escort C.O. refused to let Dorsey speak to the Deputy Superintendent of Security about weekend library call outs even though the Deputy Superintendent of Security was in the prison cafeteria at the time. Dkt. No. 17 at 15.  Defendant Escort C.O. also verbally threatened Dorsey, stating

that he did not care about Dorsey's court deadlines.  *Id.*

Defendant's refusal to allow Dorsey to speak to the Deputy Superintendent of Security in the prison cafeteria does not state any sort of claim under Section 1983.  Moreover, allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ( "allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.")).

### 12.   Defendant Recore

Dorsey alleges that defendant Recore violated Dorsey's Fourteenth Amendment rights by "telling [Dorsey's] personal information in E-Block, which went from Officers to Inmates" and eavesdropping on a telephone conference call between Dorsey, a Judge, and an attorney general.  Dkt. No. 17 at 17.

Under certain circumstances the disclosure by prison officials of inherently confidential and sensitive information regarding an inmate can support a due process violation claim under the Fourteenth Amendment. *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (recognizing limited right of privacy shielding information that a person is infected with Human Immunodeficiency Virus ("HIV")); *see also Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir.1999)

(extending Doe to information regarding an inmate's transexualism). In this instance, plaintiff's confidentiality claim is wholly conclusory and does not plausibly suggest that any deeply personal, confidential information regarding the plaintiff was either overheard, or disclosed to others, by defendant Recore. The limited, due process right to privacy in this case therefore does not apply.

### 13.   Remaining defendants and claims

Despite the liberal "notice pleading standard" ... a Section 1983-based complaint must still allege particular facts indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere "bald assertions and conclusions of law" do not suffice.  *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *see also Wright v. Smith*, 21 F.3d at 501 (A plaintiff asserting a claim under 42 U.S.C. § 1983 must demonstrate that **each defendant** was personally involved in violating his or her constitutionally protected rights.).

Even under the most generous of readings, Dorsey's conclusory allegations that all of the correctional officers from E-Block and lower F-1-15, together with their supervisors, violated Dorsey's civil rights fail to state any claim against the remaining defendants or to give any of the defendants fair notice of any claims against them.

### C.    Frivolous claims

A court may dismiss an *in forma pauperis* complaint if it determines that the complaint is frivolous. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1833 (1989).  "An action is frivolous when either:  (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir.1998) (internal quotations omitted) (citing *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.1990) (per curiam) (quoting *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833)).

A complaint is factually frivolous if the facts alleged are clearly baseless, a category that includes allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez*, 504 U.S. 25, 32-33, 112 S.Ct. 1728, 1733 (1992) (citing *Neitzke*, 490 U.S. at 325-28, 109 S.Ct. at 1833).  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Denton*, 504 U.S. at 33, 112 S.Ct. at 1733. A complaint is based on an "indisputably meritless" legal theory when either the claim lacks an arguable basis in law, *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir.1990) (per curiam), or a dispositive defense clearly exists on the face of the complaint. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir.1995). Although the Court

must accept the truth of plaintiff's allegations when considering dismissal for failure to state a claim, the federal *in forma pauperis* statute grants the Court "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual allegations are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1833.

Moreover, the law in this Circuit clearly provides that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (other citations omitted)); *Pourzandvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.) (citation omitted).

Many of the allegations set forth in Dorsey's amended complaint are factually frivolous.  Dorsey claims that he was purposely infected with bodily fluids, DNA, and poison by inmate porters under the direction of DOCS employees.  Dorsey alleges that some of the defendants, along with their fathers, are criminals or are aware of past murders.  Dorsey also alleges that inmate porters and correctional officers stole inmate property and then stored it on E-Block at Clinton Correctional Facility with the knowledge and acquiescence

33

of DOCS employees and officials.  These allegations, among others, are so outrageous and unbelievable as be factually frivolous.

## V.    Conclusion

Upon review, the Court finds that Dorsey has (1) failed to comply with the Court's December Order, (2) not alleged sufficient facts in his amended complaint to state a claim for which relief may be granted under Section 1983, and (3) set forth many factually frivolous claims.  Therefore, this action is **dismissed without prejudice**.

**WHEREFORE**, for the above-stated reasons, it is hereby

**ORDERED**, that this action is **dismissed without prejudice** due to plaintiff's failure to comply with the December Order and for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on Dorsey.


Date: May 19, 2010

_____
United States District Court Judge